**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br><br>-against-<br><br><br>ANTHONY TEPEDINO,<br>                        Defendant. | |

25 Cr. 562 (RMB)

**MEMORANDUM**
**TO PARTIES**

### *Curcio* Hearing on January 20, 2026

The Court has received the parties' joint letter, dated January 13, 2026, proposing *Curcio* questions for the hearing scheduled on January 20, 2026 at 3:00 P.M. in courtroom 17B. The parties agree about virtually every proposed *Curcio* question and the Court intends to pose the parties' questions (with minor language edits).

The parties also agree that the *Curcio* hearing is necessary because Defendant Anthony Tepedino's counsel, Kevin Marino, had been retained by a former Chief Financial Officer (CFO) of Allstate Sales Group, a company Defendant Tepedino owned. The parties believe that attorney Marino's concurrent representation of Defendant Tepedino and the former CFO -- albeit for a relatively short duration -- presents a potential conflict of interest.

> **AUSA KING:** And the government understands that Mr. Marino had [also] represented the former [CFO] of ASG . . . and then handed off that representation to new counsel. January 12, 2026 Hearing Transcript at 6:19–6:23.

> **AUSA KING:** We believe it's a potential conflict because the interests of the defendant have placed Mr. Marino under inconsistent duties given his prior representations, and that the existence of inconsistent duties create[s] a potential conflict, the potential being it may, in fact, become a conflict later on based on defenses he may want to pursue at trial or may not. So it's not a per se conflict. *Id.* at 7:7–7:13.

**AUSA KING**: But we . . . believe that it is waivable, and that's why we think that a Curcio hearing, where your Honor can ensure that Mr. Tepedino makes a knowing and voluntary waiver of those conflicts, is the appropriate action here. . . . The government wants to ensure that Mr. Tepedino's Sixth Amendment right to conflict-free counsel is protected. *Id.* at 8:9–8:16.

**ATTORNEY MARINO**: I completely understand the government's interest in making certain that Mr. Tepedino is fully apprised of any potential conflict. *Id.* at 12:9–12:11.

**ATTORNEY MARINO**: So, we represented -- when Mr. Tepedino was served with a subpoena -- he initially had his cell phone seized in September of 2024. [H]e retained us to represent him and his companies and the employees of his companies in the event they should be subjected to, most likely, in that instance, subpoenas. There were subpoenas served upon ASG and upon the related entities. Our representation -- when I say "our," I mean my law firm's representation -- of ASG and the related entities . . . was limited to responding to subpoenas. So collecting, reviewing, and producing documents. *Id.* at 13:4–13:14.

**ATTORNEY MARINO**: As far as the former CFO . . . there came a time when the government expressed an interest in speaking with that individual. *Id.* at 13:21–13:25.

**ATTORNEY MARINO**: I certainly appreciate your Honor taking the opportunity to have standby counsel here in the event Mr. Tepedino needed to be advised as to any of this by independent counsel. I understand that it is not his desire, but I want your Honor to ask that question for sure. I share their interest in having a conflict-free and trouble-free representation. *Id.* at 16:22–17:3.

The Second Circuit's guidance on the procedures required in a *Curcio* hearing are these:

[T]he trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest; (2) the Court instructs the defendant as to the dangers arising from particular conflicts; (3) permits the defendant to confer with his chosen counsel; (4) **encourages the defendant to seek advice from**

`independent counsel;` (5) allows a reasonable time for the defendant to make a decision; and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run [that risk]. *Id.* at 19:24–20:10 (quoting *United States v. Perez*, 325 F.3d 115, 119 (2d Cir. 2003)).

### **Court Encouragement of Standby Counsel**

The Court has (already) on several occasions *encouraged* Defendant Tepedino to confer with independent *Curcio* counsel in order to obtain advice about any conflicts of interest. *United States v. Curcio*, 680 F.2d 881, 890 (2d Cir. 1982) ("[T]he court should . . . encourage the defendant to seek advice from independent counsel . . . ."). *First*, at the conference on January 12, 2026, the Court advised Mr. Tepedino (in the presence of defense counsel Marino and Government counsel King) that chambers had contacted CJA counsel Joshua Dratel (who is experienced in *Curcio* conflicts issues) and invited him to the January 12 conference with the parties. Mr. Dratel could not attend the conference that day but he sent his associate Jacob Eisenmann in his place. *See* January 12, 2026 Hearing Transcript at 2:18–3:21. *Second*, the Court forwarded public pleadings to Mr. Dratel to help bring him up to speed in the event that Defendant Tepedino wished to consult with Mr. Dratel at any point. *See id. Third*, the Court invited Mr. Dratel to attend the (re)scheduled *Curcio* hearing on January 20, 2026 in the event Defendant Tepedino wished to confer with independent counsel should conflicts of interest issues arise and/or should Defendant Tepedino wish to seek *Curcio* advice.

Date:   January 16, 2026
New York, New York



RICHARD M. BERMAN, U.S.D.J.